BARRETT & WILLIFORD, and others, plaintiffs in error, vs. BLACK, COBB, & Co., defendants in error.

[1.] A man residing in Rome, wounded another, and fled into Alabama, leaving his wife behind him, who continued residing where they had been residing, when he fled. In the course of a few months, he was sued, and copies of the writs were left for him, with his wife, at the place at which he was residing when he fled.

*Held,* that there was not enough in this to show that he had changed his domicil at Rome for any other domicil; and, therefore, that the suits were well served.

[2.] The Act of 1856, enlarging the jurisdiction of Justices' Courts to demands not exceeding fifty dollars, includes demands sued for by *attachment,* as much as demands sued for by ordinary process.

*Certiorari,* from Floyd county. Decision by Judge HAMMOND, at February Term, 1858.

J. R. Saxon, a citizen of Rome, Floyd county, having committed a crime, fled to the State of Alabama, where he remained; his wife, however, continued to reside in Rome. After his departure from the State, and in May, 1857, Barrett & Williford sued out an attachment for $42 50, returnable to a Justices' Court; and in June thereafter, Black, Cobb & Co. sued out an attachment for $77 60, returnable to the Superior Court. Both attachments were levied upon property belonging to Saxon, by a bailiff. E. P. Treadaway afterwards commenced his ordinary action of debt against Saxon for

$40; and Gregory & Wooten a like action for $44 50, both returnable to a Justice's Court.

At June Term, 1857, of the Justice's Court, judgment was obtained in the attachment case of Barrett & Williford and also in the ordinary action of Treadaway, the same being for rent; and at the July Term, judgment was had in the case of Gregory & Wooten.   The bailiff in the suits of Treadaway, and Gregory & Wooten, had left a copy summons with the wife of Saxon, and had returned, that they had been left at his most notorious place of abode.

The property levied on by virtue of the attachment of Barrett & Williford was sold under an order of the Justices' Court, and brought $144 65, and that Court ordered the same to be paid to the attachment of Barrett and Williford, and to the judgments of Treadaway and Gregory and Wooten.   To this order Black, Cobb and Co. excepted, and brought the case by *certiorari* before the Superior Court.  That Court sustained the *certiorari*, and ordered the bailiff to pay the money to the Clerk of said Court, to be held subject to its order.

To this decision counsel for defendants in *certiorari* excepted.

H. A. GARTRELL, for plaintiffs in error.

R. D. HARVEY, *contra*.

*By the Court.*—BENNING J. delivering the opinion.

When it is shown that a man has acquired a domicil, it will be presumed that he retains that domicil until it be shown that he has changed it for another.  This may be assumed.

It was shown that Saxon had acquired a domicil at Rome. It was shown that he was residing there with his wife.

Now, was it also shown that he had changed this domicil?   All that was shown in proof that he had, was, that he, after wounding a man, had fled into Alabama.   And even for the proving of this, we have to trust to the *petition* for

## ATLANTA, MARCH TERM, 1858. 153

Barrett & Williford et al vs. Black, Cobb & Co.

*certiorari* of the party, not to the *answer* of the Justice of the Peace.

There is nothing in the evidence to show that he made any stop at any particular place in Alabama; nothing to show that he had not left that State. His wife still remained residing at the place in Rome at which he was residing when he fled from justice; the time he had been gone was only a few months.

This was the case made by the evidence; and we think that there is not enough in this case to show that he had changed his domicil at Rome for any other.

[1.] Consequently, we think that the suits of Treadaway, and Gregory & Wooten, which were served by the leaving of copies with Saxon's wife, at the place in Rome at which he was residing when he fled to Alabama, were well served; and that the judgment of the Court below, declaring them ill served, was erroneous.

Barrett & Williford's attachment was for over $30. Was the case beyond the jurisdiction of a Justices' Court?

The 6th section of the attachment Act of 1856 declares, that "when the amount sworn to shall exceed the sum of thirty dollars, the attachment shall be made returnable to the Superior or Inferior Court," &c.

The *object* of this section was to define where attachments within the jurisdiction of a Justices' Court shall be *returned,* and where those beyond the jurisdiction of that Court shall be *returned*; it was not the object, to define what cases are, and what are not, within *the jurisdiction* of that Court.

[2.] But even if this *was* the object, it would make no difference. This Act was passed on the 4th of March, 1856. On the 5th of March, 1856, another Act was passed, of which the first section is as follows: "That from and after the first day of March next, the jurisdiction of Justices of the Peace shall extend to the amount of fifty dollars, principal with interest."

That this language was intended to include suits by *at-*

*tachment,* as much. as suits by ordinary process, is apparent from the second section, which declares, that it "shall and may be lawful for all promissory notes, accounts, and all other evidence of debts that do not exceed fifty dollars, to be sued before a Justice of the Peace, in a Justices' Court *in the same manner as is now prescribed by law,*" &c.    The italicising is mine.

This Act, being the later of the two, must prevail, even if the other is to be construed, as in conflict with it.

So, we think that the Court erred in *holding* Barrett & Williford's attachment not within the jurisdiction of the Justices' Court.

Judgment reversed.