### McLEOD *v.* McLEOD.

1. Where a husband and wife resided in a certain county, and the husband was convicted of a felony, sent to the penitentiary, and confined in another county, the venue of a divorce suit by the wife against him was in the county where they resided; and where suit was there brought, alleging the defendant to be of said county, an entry of service by the sheriff, which recited that the defendant was not to be found in the county, but was said to be in the penitentiary, and that the sheriff had left a copy at the residence of his wife in a named city in said county, was irregular. But after the husband had returned from the penitentiary, and a total divorce with relief of disabilities of both parties had been granted, and the husband had remarried and died, the divorce will not be declared void at the instance of a son of the deceased by the first wife, upon a collateral attack arising upon an application for administration on his estate.

2. Where pending a divorce suit by the wife against the husband, or even after the obtaining of the first verdict, they cohabited as husband and wife, this operated as a condonation, and would have furnished good reason for a refusal to grant a second verdict; but after the case had proceeded to a second verdict finding a total divorce and removing the disabilities of both parties, and after the remarriage and death of the husband, the divorce verdicts will not be held void, on account of such cohabitation, upon collateral attack by the son of the deceased, in an application for administration upon his estate.

DECEMBER 15, 1915.

Appeal. Before Judge Thomas. Thomas superior court. October 21, 1914.

*J. H. Merrill* and *Snodgrass & MacIntyre,* for plaintiff.

*Titus, Dekle & Hopkins* and *Fondren Mitchell,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. This case presents a tangled skein, the constituent threads of which are divorce, death, and dollars. A married man was convicted of a felony and sent to the penitentiary. While he was there his wife brought a suit against him, seeking to obtain a total divorce. The grounds of the petition were adultery, and conviction of an offense involving moral turpitude. The suit was brought in the county where the wife still remained, after the departure of the husband for the penitentiary. The entry of service by the sheriff was in the following words: "The defendant not to be found in this county. Said to be in the penitentiary. But I have left a copy at the residence of his wife in Thomasville, Ga., March 30th, 1891." Two verdicts were rendered in favor of the plaintiff, the first being dated in 1891, and the second "Apr. 20/'08." The second verdict found for the plaintiff a total divorce, and relieved the disabilities of both parties. The defendant, after being discharged from the penitentiary, married another woman, and later died, leaving both women surviving him. The son of the first wife applied for administration upon the estate. The second wife caveated the application, and claimed the administration as his widow. The applicant responded by contending that the divorce proceedings were a nullity, because the entry of service was void and gave the court no jurisdiction, and therefore the second marriage was void, and the caveatrix was not the widow of the intestate.

Had the first wife, who obtained the divorce, been the person who set up such contention, the question of estoppel because of her obtaining the divorce on the basis of such entry, and taking no action until her husband, or ex-husband, had married and died, might have been involved. See, in this connection, *McConnell.* v. *McConnell,* 135 *Ga.* 828 (70 S. E. 647); Arthur *v.* Israel, 15 Colo. 147 (25 Pac. 81, 10 L. R. A. 693, 22 Am. St. R. 381); Mohler *v.* Shank, 93 Iowa, 273 (61 N. W. 981, 34 L. R. A. 161, 57 Am. St. R. 274); Greene *v.* Greene, 68 Mass. 361 (61 Am. Dec. 454, 465); Brown *v.* Grove, 116 Ind. 84 (18 N. E. 387, 9 Am. St.

R. 823, 826). She, however, is not the contestant, but her son by the intestate. By the Civil Code (1910), § 5563, after providing for the service of process, it is declared that "leaving a copy at defendant's residence shall be a sufficient service." This has long been the law of this State. In *Barton* v. *Barton*, 74 *Ga.* 761, where a husband was sent to the penitentiary, and confined in a different county from that in which he had been living before his conviction, and his wife brought a suit against him for divorce, it was held that his involuntary leaving of the county which he had chosen as his domicile, and remaining in custody in a different county, did not change his domicile for suit, and that the proper venue of the action for divorce was in the county where he had lived before his conviction. See also *Grant* v. Dalliber, 11 Conn. 234. If that was the venue of the action because there had not been a change of his residence, then there must have been some way to serve him. If the present action had been brought against him by a person other than his wife, there could be little doubt that service by leaving a copy at his residence in the county where he lived before his conviction, and where his wife (from whom he was not separated) still lived, would be good. It has been held, that although a man may be absent for a considerable time from a county, if he has not permanently separated from his wife, or removed from the county, service by leaving a copy at their residence where she still remained was sufficient. *Rogers* v. *Craig*, 68 *Ga.* 286. It has also been held, that where a man wounded another and fled into another State, leaving his wife, who continued to reside where they had been residing, service by leaving a copy of the writ with his wife at such residence was sufficient service on him. *Barrett* v. *Black*, 25 *Ga.* 151; *Collins* v. *Camp*, 94 *Ga.* 460 (20 S. E. 356). Where a married man lives in this State and is not separated from his wife, his domicile is generally where his wife and family reside. *Daniel* v. *Sullivan*, 46 *Ga.* 277.

The peculiarity of the situation in the present case grows out of the fact that the wife was the plaintiff. Still she sued in the proper county. The sheriff undertook to serve the defendant in the manner above stated. The defendant returned from the penitentiary. Verdicts were rendered, by the second of which his disabilities were removed. He remarried, presumably relying on this verdict. He made no objection to the service, and never at-

tacked the verdicts during his lifetime. Under these facts, the divorce will not be declared void at the instance of his son by his first wife, on a collateral attack in a contest over the grant of letters on his estate, on the ground that the service was void and all the subsequent proceedings were void. Under such circumstances it will not be held that the divorce was a nullity, and that the second wife, who claimed the right to administer, was no widow, but only a bereaved concubine.

2. Evidence was introduced tending to show that after the first verdict in the divorce suit was rendered in 1891, and before the second verdict (the law of this State requiring two concurrent verdicts, in order to grant a total divorce) was rendered in 1908, the husband returned from the penitentiary, and he and his first wife for a time resumed their relations as husband and wife and cohabited as such. From 1891 to 1908 was a long time between verdicts. It would seem to indicate that the desire or need of a divorce was not urgent. But it can not be said that the suit had died. The plaintiff, after a protracted season of inactivity, obtained her final verdict, and it does not appear that the defendant made any objection thereto. As to the cohabitation of the husband and wife after the bringing of the divorce suit, or perhaps after the obtaining of the first verdict, this may have amounted to condonation, and have furnished a good ground of objection to the grant of a final verdict, if it had been urged, or had come to the attention of the court, in due time. But this truce during the matrimonial war did not render the final verdict void. If evidence of condonation were sufficient to render a verdict in a divorce case a nullity, on collateral attack, then verdicts and judgments in such cases would always be open to attack by proving facts which might have furnished a good defense before such verdicts and judgments were rendered.

From what has been said it follows that there was no error in directing a verdict in favor of the second wife, on the trial of the contest for administration, which had been carried to the superior court by appeal. Civil Code (1910), § 3943, par. 1.

*Judgment affirmed. All the Justices concur.*