[L. A. No. 5922.   Department Two.—May 14, 1919.]

In the Matter of the Estate of GERTRUDE C. PUSEY, Deceased.

[1] FOREIGN JUDGMENT—RECITAL OF JURISDICTIONAL FACTS—IMPEACHMENT.—A recital in a foreign judgment of facts sufficient to give the court jurisdiction can be impeached by a bare preponderance of evidence of a nature of necessity inconsistent with the recital.

[2] ID.—ESTATES OF DECEASED PERSONS—WILL CONTEST—COLLATERAL ATTACK UPON FOREIGN JUDGMENT IN DIVORCE ACTION — AFFIDAVIT FOR CONSTRUCTIVE SERVICE OF SUMMONS — IMPEACHMENT OF RECITAL—FINDING SUPPORTED BY EVIDENCE.—In this contest to the probate of a will involving a collateral attack on a foreign judgment of divorce for want of jurisdiction because of the absence of a sufficient affidavit for the publication of the summons, it is held, notwithstanding the recital in such judgment that service of summons by publication had been ordered "upon due and proper affidavits," the evidence supports the finding that but one affidavit was filed, which was insufficient.

[3] ID.—MATTERS OCCURRING AFTER ALLEGED DIVORCE—TESTIMONY OF FORMER SPOUSE.—In a contest to the probate of a will between two persons, both of whom claim to be the surviving husband of the testatrix, the contestant who seeks to establish the validity of a decree of divorce between the proponent and the deceased, cannot object to the introduction of testimony of the testatrix as to matters occurring after the alleged divorce on the ground that such testimony was privileged under section 1881 of the Code of Civil Procedure.

[4] ID.—COMMUNICATIONS BETWEEN HUSBAND AND WIFE — ACT OF COMMUNICATING — TESTIMONY PERMISSIBLE — STATUTE.—The provision of section 1881 of the Code of Civil Procedure that neither husband nor wife can, even after the termination of the marriage, be examined, without the consent of the other, as to any communication made by one to the other during the marriage, does not prohibit testimony, the purpose of which is to show the act of communicating and not the disclosures involved in the communications.

[5] ID.—VOID JUDGMENT — WANT OF JURISDICTION — LACHES—STATUTE OF LIMITATIONS.—The doctrine of laches and the bar of the statute of limitations have no application to a collateral attack upon a foreign judgment based on want of jurisdiction.

[6] ID.—ATTACK UPON VOID JUDGMENT — RULE.—A judgment absolutely void may be attacked anywhere, directly or collaterally, whenever its presents itself, either by parties or by strangers.

[7] ID.—WILL CONTEST—COLLATERAL ATTACK UPON FOREIGN JUDGMENT —RIGHT OF PROPONENT.—Where the probate of the will of a testatrix was contested by one claiming to be her surviving husband on the ground that the instrument was executed prior to their marriage and was thereby revoked, and the contest was opposed by one also claiming to be the surviving husband of the testatrix on the ground that she had never been legally divorced from him, the proponent was entitled to attack the foreign judgment in the action for divorce on the ground that it was void for want of jurisdiction because of the absence of a sufficient affidavit for publication of the summons.

APPEAL from an order of the Superior Court of Orange County admitting will to probate. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. D. Latourette, R. Y. Williams and A. W. Rutan for Appellants.

Steele Finley, E. J. Flemming, B. F. Woodard, Michael F. Shannon and E. L. Kolb for Respondent.

LENNON, J.—For the third time this case is here on appeal. The question heretofore presented and now again presented for review involves the correctness of an order of the lower court admitting the will of Gertrude C. Pusey to probate upon the petition of the respondent, S. H. Finley. The appellants are Henry F. Pusey, who contested the probate of the will, and C. S. Crookshank, who, as nominee of the said Henry F. Pusey, petitioned for letters of administration upon the estate of the deceased. These appellants now, as heretofore, contend that the will in question was revoked by the marriage of the testatrix to Henry F. Pusey. The respondents, on the other hand, contend that the testatrix never in fact became the wife of Pusey, because he had never been validly divorced from his former wife. In 1893, a decree of divorce in favor of Henry F. Pusey was entered by an Oregon court of competent jurisdiction, which recited that jurisdiction of the defendant had been obtained by publication of summons. The respondents assert, however, that the decree of divorce was void for want of jurisdiction over the defendant, because there was no sufficient affidavit for

CLXXX Cal.—24

the publication of summons. The said decree was admitted in evidence. It contains, among other things, a recital that service of summons by publication had been ordered "upon due and proper affidavits. . . . " However, only one affidavit to support the order for publication of summons appeared in the record of the divorce action. This affidavit was decreed by the trial court to be insufficient as a basis for the order of publication of summons, because it contained no averment or attempted averment that due diligence had been employed to ascertain the residence of the defendant in the divorce action or that such residence could not have been ascertained by the exercise of due diligence.

Upon the first trial in the probate proceeding, it was not affirmatively shown that the defendant in the divorce action was alive at the time of Pusey's marriage to the testatrix. Upon an appeal to this court, it was then held that a presumption should be raised in favor of the validity of the marriage, whereby it should be assumed that the defendant in the divorce action was dead at the time of the marriage. The order of the lower court admitting the will to probate was reversed for the error of the court in failing to consider this presumption. (*Estate of Pusey,* 173 Cal. 141, [159 Pac. 433].)

A second trial in the probate proceeding was thereupon had, wherein it was shown and found that the defendant in the divorce action was alive at the time of Pusey's marriage to the testatrix. Upon the appeal in that case, this court emphasized the fact that the decree of divorce recited that service of summons by publication had been ordered "upon due and proper affidavits. . . . " It was held that this recital imported that more than one affidavit was filed to obtain the order wherefore, the attack on the judgment being collateral, it would be presumed in its favor that there was at least one other affidavit in addition to the defective affidavit appearing in the record; that such second affidavit was sufficient and that it was lost after being duly filed. For the error of the lower court in failing to consider this presumption the order admitting the will to probate was again reversed. (*Estate of Pusey,* 177 Cal. 367, [170 Pac. 846].)

A third trial was had. Inasmuch as any possible objection to the allowance of such a new trial is fully and finally answered in the opinion rendered in the second appeal in this

case (177 Cal. 367, [170 Pac. 846]), we need not again con-
sider the point here. Conflicting evidence was introduced
bearing on the issue of the filing of a second affidavit to sup-
port the order for publication of summons. The court found
that no such affidavit was in fact filed and again made an
order admitting the will to probate.

The appellants attack the order upon various grounds:
(1) That the evidence is insufficient to support the finding;
(2) that some of the evidence was improperly received;
(3) that any attack on the judgment is barred by the statute
of limitations or by the equitable doctrine of laches; and
finally (4) that it is not competent for a stranger to the
record, who had no interest in the outcome of a judgment at
the time it was made, to attack it collaterally, even on the
ground that it is void for want of jurisdiction.

[1]  In support of the first contention, appellants lay great
emphasis upon a statement in a former decision of this case
that a recital in a foreign judgment of facts sufficient to give
the court jurisdiction could be impeached only by proof *of
necessity* inconsistent with the recital. But the words, "of
necessity," refer to the nature and not to the weight of such
independent proof. If there was a bare preponderance of
evidence of a nature of necessity inconsistent with the recital,
that would be sufficient to impeach it.

It was proved that the register of actions recorded the filing
of but one affidavit in the divorce action in question. Of
course a second affidavit might have been filed and never
recorded. But an examination of the files for a period of
six months before and six months after the filing of the com-
plaint in the divorce action was proved to have resulted in
failure to discover a second affidavit. This evidence was of a
nature necessarily inconsistent with the recital that proper
affidavits were filed, but it might be urged that a second affi-
davit, though filed, might have been not only not recorded
but also lost. To prove that such was the case appellants
placed Senator Brownell on the stand. He had been Pusey's
attorney in the divorce action in question. The material por-
tion of his testimony relied on by the appellants reads as fol-
lows: "My recollection is absolutely that my affidavit was
defective on the ground that I did not show sufficient dili-
gence. Now that is my idea. Now, although I don't say
that positively, but it must have been that because I can see

right in that affidavit that I left it out. I can't remember
the details, but I know the judge told me my affidavit was
wrong and I came back here and saw Pusey and made an
additional affidavit, and I am satisfied it was to show that he
exercised the proper diligence in trying to ascertain what her
residence was. Now, that is my recollection. I cannot in all
these years go into detail, because I don't know.'' It is
significant to observe that Brownell here expressed his idea
of the preparation and not of the filing of the alleged second
affidavit. Moreover, it was the province of the trial judge
to pass upon the credibility of the witness. Numerous
depositions were offered to the effect that the reputation of
the witness for truth, honesty, and integrity was not good.
While these were met by other depositions, the trial court
might properly, we think, have wholly disbelieved the tes-
timony quoted, and such a conclusion would be further sup-
ported by the consideration that the statement was quite
possibly influenced by a desire to make it appear that there
had been no negligence in handling the divorce action. In
addition to these considerations, Brownell's testimony itself
not only tends to impeach the statement quoted, but contains
admissions which positively support the contention of the
respondents. Being presented with an affidavit in another
divorce action brought by him at about the same time as the
one in question which was defective in the same particular
as the affidavit filed in the Pusey case, he stated: ''Oh, I
made a great many affidavits that way. I haven't any doubt
but what I did. I was practicing politics in those days more
than anything else and was very careless in my business.''
This statement could have been properly considered by the
court as evidence that a second affidavit was not prepared,
or that, if it was prepared, it was not filed.

Finally, we have the testimony of the defendant in the di-
vorce action which the appellants evidently regard as very
damaging to their case. And so in fact it is. Describing an
interview with Pusey subsequent to the divorce, she states:
''He had very little to say. I was trying to tell him all the
time that he did know where I was all the time. I couldn't
hardly realize what this was all about. I remember so well
I kept saying to Pusey, 'You did know I was there, Henry.
You used to write to me all the time.' He didn't answer me
for a while, and finally he said, 'Yes, I did know where you

were.'" If the court believed this testimony, as it might properly have done, it would follow that Pusey could only have executed a proper affidavit by committing perjury. We are not ready to hold that the court was bound to presume that he made a second affidavit if it had further to presume and say that in so doing he made a perjured affidavit.

[2] We are satisfied that the evidence, considered as a whole, is sufficient to support the finding that no second affidavit was in fact filed.

[3] But it is contended on behalf of the appellants that the testimony of Julia Proctor, the defendant in the divorce action, was improperly received. The effect of the decision of the court was to hold that Julia Proctor was at all times the wife of the appellant, Henry F. Pusey. The appellants, however, were contending throughout the case that the decree of divorce was valid and that from and after that decree Julia Proctor ceased to be the wife of the appellant Pusey. Under these circumstances, the appellants offered the objection that her testimony was incompetent, irrelevant, and immaterial. Under some circumstances this general objection might be considered sufficient to raise the point that the testimony sought to be adduced was privileged under that portion of section 1881 of the Code of Civil Procedure, which reads: "A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband, without his consent." (*Humphrey* v. *Pope,* 1 Cal. App. 374, [82 Pac. 223].) In this case, however, there had been a decree of divorce the validity of which was the matter in dispute. After that decree, both parties to the marriage had attempted to contract marriage and had entered into the marriage relation with other parties. The appellants, who were seeking to establish the validity of the decree of divorce, cannot, then, well be allowed to claim that by their general objection they were seeking the benefit of a relation which they claimed did not in fact exist. To properly apprise the court of its nature the objection should, to say the least, have been made in definite and unequivocal language.

[4] It is true that Julia Proctor testified to communications between herself and her husband before as well as after the decree of divorce and that it is further provided in section 1881 of the Code of Civil Procedure that neither husband nor wife can, even after the termination of the marriage,

be examined, without the consent of the other, as to any communication made by one to the other during the marriage. It is to be noted, however, that the point sought to be shown by the communications here in question was the act of communicating and not the nature or character of the communications themselves, the purpose of the inquiry being to show that the appellant Pusey knew the whereabouts of his wife. These circumstances present a proper case for the application of the rule stated in 4 Wigmore on Evidence, section 2337: "The privilege has for its object the security from apprehension of disclosure, a security in consequence of which confidences will be freely given and not withheld. The protection therefore extends only to communications, i. e., utterances, not acts—the reasoning being analogous to that which establishes a similar limitation for communications between attorney and client . . . " We think, therefore, that the purpose of the inquiry being to show the act of communicating and not the disclosures involved in the communications, the testimony does not come within the inhibition of the statute.

[5] Considering the contention that the attack upon the judgment is barred by laches or by the statute of limitations, we find that the appellants have cited no statute the effect of which would be to bar the attack upon the judgment in question. They do indeed cite *Estudillo* v. *Security Loan etc. Co.,* 149 Cal. 556, [87 Pac. 19], but the language in that case is applicable only to actions in equity for relief on the ground of fraud. Since the judgment here in question is attacked not upon the ground that it is voidable for fraud but upon the ground that it is void for lack of jurisdiction, that case has no bearing upon the issue. Appellants cite numerous cases bearing on the doctrine of laches, but they have failed to show how that doctrine can apply to this case. Nor can it, we think, be asserted that the respondents have in any way slept upon their rights.

[6] Were it not for the elaborate array of cases presented by the appellants, we should consider that any discussion of their fourth point was concluded by the statements in *Forbes* v. *Hyde,* 31 Cal. 342, 348: "A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any

right whatever.'' (See, also, *Pioneer Land Co.* v. *Maddux,* 109 Cal. 638, [50 Am. St. Rep. 67, 42 Pac. 295], and *Adams* v. *Adams,* 154 Mass. 290, [13 L. R. A. 275, 28 N. E. 260].)

[7] An examination of appellants' cases, however, reveals the fact that, practically without exception, it was assumed or clearly shown that the defendant in the action wherein the judgment which was being attacked had been rendered had been regularly brought within the jurisdiction of the court. It is indeed stated in 23 Cyc. 1068, that strangers to the record can attack a judgment only when rights accruing to them prior to its rendition are affected. We have examined all the cases cited to support this statement. In each case *property* rights had been the subject of adjudication and the rights of the party attacking the judgment had arisen with respect to the property in question after the judgment had been rendered. The judgment was in no case alleged to be void. Obviously, no rule based on these cases has any application to the case at bar. *McLeod* v. *McLeod,* 144 Ga. 359, [87 S. E. 286], appears at first glance to support the appellants, but we note that the court decided not that a stranger could not attack a void judgment, but that the judgment in question was not void. It remains only to consider the case of *Harpold* v. *Doyle,* 16 Idaho, 671, [102 Pac. 159]. We do find language in support of the appellants' contention in the opinion of Sullivan, J. It appears, however, to be *dictum.* It was dissented from by Stewart, J., and upon a rehearing of the case it was so qualified as to remove any support it may formerly have afforded to the argument of appellants. Under the circumstances of this case, the respondents are entitled to attack the judgment in the divorce action on the ground that it is void for lack of jurisdiction. They have, we think, been successful in this attack.

The order appealed from is affirmed.

Wilbur, J., and Melvin, J., concurred.