JUNE M. LORANT *vs.* ANDREW LORANT.

Essex.   October 18, 1974. — November 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Divorce,* Jurisdiction, Foreign divorce, Decree.   *Constitutional Law,* Full faith and credit, Divorce.   *Jurisdiction,* Divorce proceeding. *Domicil.*

Where it appeared that after a husband had gone from Massachusetts to Georgia and petitioned a court there for a divorce the wife appeared there and had an opportunity to contest the divorce, that a decree of divorce was entered adjudicating that the court had jurisdiction to enter it, and that under the law of Georgia a collateral attack on the decree on the ground that the petitioner had not acquired a domicil there would not be allowed, it was held that the full faith and credit clause of the Federal Constitution precluded the former husband from subsequently attacking in a Massachusetts proceeding the validity of the Georgia divorce on the ground of lack of a Georgia domicil on his part; allegations by the husband in the Massachusetts proceeding that the parties "colluded" or acted "fraudulently" with respect to the Georgia divorce did not aid him. [383-386]

BILL IN EQUITY filed in the Probate Court for the county of Essex on October 14, 1971.

The suit was heard by *Pettoruto,* J.

*Jacob M. Atwood (Herbert D. Friedman* with him) for Andrew Lorant.

*Malcolm F. MacLean, III (Robert L. Holloway, Jr.,* with him) for June M. Lorant.

KAPLAN, J.   The former husband attacks on this appeal a final decree of the Probate Court which at the suit of the

wife ordered enforcement of a separation agreement and declared valid a Georgia divorce decree obtained by the husband upon an appearance in the Georgia court by the wife.[1] We affirm.

To state the facts derived from the judge's report of material facts and from other matters of record: June and Andrew Lorant were married in England in 1950. Subsequently they resided in Ohio and then in Boxford, Massachusetts. There were three children. The marriage became seriously troubled and on March 28, 1965, the wife, taking the children with her, justifiably (as she asserted) parted from the husband. About that time she had commenced a suit in the Probate Court for judicial separation and support. The suit was evidently abandoned as superfluous because on May 19, 1965, husband and wife, each represented by counsel, entered into a separation agreement (modified in particulars on June 2, 1965).[2] This contained a series of property provisions, confirmed custody of the children in the wife with visitation rights in the husband, and called for monthly payments of $100 for support of each child and $225 for the wife, maintenance by the husband of his life insurance in favor of the children, and so forth. The agreement further provided that if a final decree of divorce between husband and wife was not entered within a year, the husband on thirty days' written notice could elect whether to declare the agreement void or to continue under it; in either case the wife was to reconvey to the husband a house owned by them jointly at the time of the agreement and to become under the agreement the property of the wife; if the wife had by then sold the house, she was to pay the net proceeds to the husband. Upon the award of a decree of divorce to husband or wife by a court of competent jurisdiction, the agreement was to be made part of the decree, but was not thereby to be merged in the

---

[1] The Probate Court dismissed a companion libel for divorce brought by the husband on his assumption that the prior Georgia divorce decree was invalid, but that dismissal is not here for review.

[2] The agreement stated that it was a Massachusetts contract to be governed by Massachusetts law.

decree, rather it was to survive and be binding and conclusive on the parties.

In September, 1965, the husband went to Augusta, Georgia, and through counsel filed a petition for divorce in the Superior Court of Richmond County, Georgia, alleging that he resided in that county and that the respondent wife had treated him abusively. In an "acknowledgement of service," the wife, separately represented by counsel, entered her appearance but without consenting to a divorce, agreed to certain procedural arrangements in the further conduct of the suit, denied the ground alleged for divorce, and acknowledged that the court had jurisdiction of the parties and subject matter. In answer to interrogatories the husband swore that he had resided in Richmond County for more than six months before filing his petition;[3] he also supported by oath his allegation of abusive treatment by his wife. On November 9, 1965, a final decree of divorce a vinculo was entered by the court with provision that "custody of the minor children be with the defendant, and support of the minor children be left with the parties as agreed between them." Time for appeal ran out and the decree stands unmodified.

After securing this divorce, the husband on March 17, 1966, remarried in New York. In turn his second wife brought a petition for divorce in Georgia which eventuated in a decree on May 21, 1968.

Some six years after the execution of the separation agreement, on June 30, 1971, the husband gave written notice that the 1965 Georgia divorce was in his view invalid, and as no decree of divorce, properly speaking, had been entered within a year following the agreement, he was exercising his option to declare the agreement void, and demanding additionally that the wife pay over to him the net proceeds of the sale of the house.

---

[3] Georgia Code Ann. § 30-107 (1969), provides in part that "[n]o court shall grant a divorce of any character to any person who has not been a bona fide resident of the State six months before the filing of the application for divorce . . . ."

The wife responded with her present "equity petition" in the Probate Court. As originally filed, the petition sought enforcement of the Georgia decree, alleged to incorporate by reference the separation agreement which was also stated to survive the decree. An amendment to the petition, allowed by the court, alternatively sought specific enforcement of the agreement itself. The husband's answer denied that the Georgia decree had any legal validity and averred also that the separation agreement was without effect as it was executed as part of a collusive and fraudulent effort to obtain a divorce. After hearing, the probate judge entered the decree appealed from declaring the separation agreement to be fair, untainted by collusion or fraud, and valid; declaring the Georgia decree to be also valid; and ordering that execution issue for arrears of $1,825 and that the husband resume payments and further comply with the terms of the agreement.[4]

Strictly, it might be enough to say that the husband had lost his option under the separation agreement[5] before he purported to exercise it in 1971. The agreement did not state how long the option was to be open, but if we import a reasonable time, that period must almost certainly have expired when the letter of repudiation was written: it would be hard indeed to allow unilateral destruction of reliances and expectations on the part of the wife, the children, and possibly others that had been built up over a period of time by mutually acquiescing conduct of the parties.

The probate judge, however, inquired into the status as between husband and wife of the Georgia divorce, and for assurance in deciding the controversy we do the same. The husband with an air of pious repentance comes forward in the present suit to say that in fact he had not resided in Georgia for the required six months before filing his

---

[4] Correspondingly the court dismissed the husband's libel for divorce, n. 1 above.

[5] The judge below spoke of the agreement as being terminable by either party in case no decree of divorce was entered within a year. Apparently he thought the option in the husband implied a similar option in the wife. The point is unimportant for present purposes.

petition for divorce and that he had not in any event the intention to remain in the State that could support a finding of domicil; therefore, he claims, Georgia did not have judicial jurisdiction to grant the divorce, and the divorce decree crashes. The probate judge correctly stated in his report of material facts that "[a]s to the question of whether the libellant [husband] acquired a domicile in Georgia, I am not free to find whether he did or not." Such an inquiry was precluded by *Sherrer* v. *Sherrer,* 334 U. S. 343 (1948), and *Coe* v. *Coe,* 334 U. S. 378 (1948). See *Johnson* v. *Muelberger,* 340 U. S. 581 (1951); *Cook* v. *Cook,* 342 U. S. 126 (1951). See also, for applications and inter- pretations by this court, *Old Colony Trust Co.* v. *Porter,* 324 Mass. 581 (1949); *Chittick* v. *Chittick,* 332 Mass. 554 (1955). Cf. *Madden* v. *Madden,* 359 Mass. 356 (1971), cert. den. 404 U. S. 854 (1971); *McCarthy* v. *McCarthy,* 361 Mass. 359 (1972). The adjudication by the Georgia court that it had jurisdiction to enter the decree (an adjudication implicit in making the decree, but rendered explicit in the present case by the decree's recitals) is, as between the parties, entitled under the full faith and credit clause to the same res judicata effects in Massachusetts that it would be accorded by Georgia, provided only the parties appeared in the Georgia court and there was an actual contest of the issue of jurisdiction or a fair opportunity to contest it; it does not matter that such an opportunity was forgone, as in the present case, by an admission or acknowledgment that jurisdiction existed.[6] The only question left is what res judicata effects Georgia would accord. The parties have briefed the question. It is reasonably clear that Georgia would not allow a "collateral" attack, analogous to the attack made here, on the 1965 divorce decree regular on its face, for any such alleged reason as that the husband had not in fact resided in Georgia for six months or had not

___

[6] The principle of *Sherrer* v. *Sherrer* is expressed in Restatement 2d: Conflict of Laws, § 73 (1971), broadly as follows: "Res Judicata. A spouse who was personally subject to the judicial jurisdiction of the divorce state, and those in privity with him, may be precluded by application of the rules of res judicata of the divorce state from thereafter attacking the decree collaterally."

acquired a domicil there. *Schulze* v. *Schulze,* 149 Ga. 532 (1919). *Thomas* v. *Lambert,* 187 Ga. 616 (1939). *Kicklight-er* v. *Kicklighter,* 217 Ga. 54 (1961). See Ga. Code Ann. §§ 110-701, 110-708 (1973).[7] The same would doubtless hold as to a claim that grounds for divorce had not in fact existed. With the *Sherrer* rule controlling, it adds nothing for the husband to charge that the parties "colluded" or acted "fraudulently" in using the Georgia court to procure the divorce. See the discussion in *Chittick* v. *Chittick, supra,* at 559-560 (1955).[8] So the Georgia decree must be considered valid, as the judge below held, and it follows that the occasion did not arise for the husband to exercise an option to void the separation agreement.

If need be, another basis could be offered for holding that the Georgia decree may not be impeached, namely, that the husband is "estopped" from questioning it in the sense that it would be conspicuously unfair and inequitable for him to do so at this stage. See *Dennis* v. *Dennis,* 337 Mass. 1, 4-7 (1958), and cases cited. A case where the spouse who himself initiated the divorce proceeding and obtained the divorce decree seeks much later to repudiate it in order to avoid obligations incident to or dependent on it invites defensive use of estoppel — a matter, we should note, that appears to be governed by Massachusetts not Georgia law.[9]

It is disputed whether the language of the Georgia decree about custody and support was enough to "incorporate"

---

[7] For earlier expressions, see *Dixon, Mitchell & Co.* v. *Baxter & Co.* 106 Ga. 180 (1898); *Hood* v. *Hood,* 143 Ga. 616 (1915); *McLeod* v. *McLeod,* 144 Ga. 359 (1915).

The case of *Patterson* v. *Patterson,* 208 Ga. 7 (1951), is an instance where Georgia, consistently with the *Sherrer* doctrine, was prepared to reëxamine whether the husband, plaintiff in a Nevada suit for divorce in which a decree had been entered, had been domiciled in Nevada when he sued there; the critical fact was that the wife had not appeared in the Nevada suit. See *Williams* v. *North Carolina,* 325 U. S. 226 (1945).

[8] As to the separation agreement itself, besides the declaration in the decree appealed from that it was fair and reasonable and made without fraud or collusion, the judge says in his report of material facts that, despite the termination provision, "the validity of the agreement did not depend upon the granting of a divorce."

[9] These propositions are developed in Restatement 2d: Conflict of Laws, *supra,* § 74, and comments a, b.

and "merge" the separation agreement or a part of it in the decree, or whether, on the contrary, the agreement stands apart from the decree. The question has no immediate substantive importance. There is a suggestion that it has a bearing on the jurisdiction of the Probate Court, but we see no jurisdictional infirmity. Probably it could be asserted with enough plausibility to vest jurisdiction under G. L. c. 208, § 35, that the suit was one to enforce a foreign decree merging the separation agreement.[10] See *De Gategno* v. *De Gategno,* 336 Mass. 426, 428-429 (1957). Alternatively the suit was one for specific performance of the separation agreement, within the equity jurisdiction of the Probate Court by the general terms of G. L. c. 215, § 6.[11] The husband did not plead adequacy of the remedy at law. He contends here that the wife should be barred equitable relief because of her "unclean hands." It is hard to see how jurisdiction could be ousted even if the amorphous doctrine applied to the facts, but it does not; the attempt to introduce it is akin to the effort, with which we have dealt earlier in this opinion, to avoid the full faith and credit clause, as interpreted in *Sherrer* v. *Sherrer, supra,* by appeals to the notion of "collusion" or "fraud." Execution for support obligations already in arrears was properly joined with the order to resume performance under the agreement.

*Decree affirmed.*

---

[10] Section 35, as amended by St. 1950, c. 57, provides: "The court may enforce decrees, including foreign decrees, for allowance, alimony or allowance in the nature of alimony, in the same manner as it may enforce decrees in equity."

[11] Section 6, as appearing in St. 1963, c. 820, § 1, provides: "Probate courts shall have original and concurrent jurisdiction in equity with the supreme judicial and superior courts of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction, except . . .."