# EVA ZEIG, Appellant, *v.* JOSEPH ZEIG, Respondent

No. 3531

October 25, 1948.                    198 P.2d 724.

*Morse & Graves,* of Las Vegas, for Appellant.

*Louis Wiener, Jr.,* of Las Vegas, amicus curiae.

*David Zenoff,* of Las Vegas, amicus curiae.

## OPINION

By the Court, HORSEY, J.:

The appellant, Eva Zeig, by her then attorney, William G. Ruymann, Esq., on the 27th day of February 1947, in the Eighth judicial district court of the State of Nevada, in and for the county of Clark, filed, as plaintiff therein, a complaint for divorce from her husband, Joseph Zeig, alleging extreme cruelty (mental in character) as a ground for divorce. She alleged further, that there were no children the issue of the marriage, that all property rights of the parties were settled December 19, 1946, by a written agreement which she alleged "is equitable and just and should be by the court ratified and approved." The plaintiff prayed for a decree of absolute divorce, that the court ratify and approve the property settlement agreement, that her former name, Eva Slifka, be restored to her, and for general relief. Joseph Zeig, the defendant husband, by his attorneys, Earl & Earl, entered his appearance in the action by causing his answer to be filed therein, in which, in paragraph II thereof, he denied paragraph V of plaintiff's complaint, which latter was the paragraph in which the plaintiff had alleged extreme cruelty.

The case came on regularly for trial on said 27th day

of February 1947. The plaintiff testified on her own behalf and in support of each of the allegations of her complaint. Her testimony was satisfactorily corroborated as to her residence and actual corporeal presence in Clark County, Nevada, for more than six weeks immediately prior to the filing of her complaint, by witness Joseph Biggs, and the court, finding all the allegations of the complaint to be true and satisfactorily proven by the evidence, granted the plaintiff an absolute divorce, and also decreed and ordered that her former name of Eva Slifka be restored to her. The court further, in the decree, ordered, adjudged and decreed "that that certain property settlement agreement of the parties hereto, of date, December 19th, 1946, settling their property rights, be, and the same is, hereby by the court ratified and approved and each of the parties hereto ordered to comply with each of the terms thereof." The plaintiff had testified, in effect, in reference to the agreement that it was a fair, equitable settlement of all the property rights of herself and husband.

The record discloses, and it is undisputed, that the defendant, Joseph Zeig, died on or about March 12, 1947, which was less than two weeks after the date the divorce was granted.

On August 14, 1947, Harold M. Morse, Esq., and Madison B. Graves, Esq., were, with the consent of William G. Ruymann, Esq., substituted as attorneys for the plaintiff, Eva Zeig, in said divorce action; and on that date they caused to be filed, in said court and in said action, a paper entitled, "Notice of Motion to set aside and vacate Judgment and Decree," and signed by Messrs. Morse & Graves, plaintiff's then attorneys. There was filed, also, on the same date, an affidavit made and signed by Eva Slifka, formerly known as Eva Zeig, such affidavit being entitled, "Affidavit in support of Notice of Motion to set aside and vacate Judgment and Decree." It appears necessary, in fairness to all the parties, that this affidavit, which, together with the

above-mentioned notice of motion, was filed in said court and in said divorce action less than six months from the date the judgment and decree of divorce was entered and when, under district court rule XLV, the district court still had jurisdiction to vacate, amend, modify or correct such judgment or decree upon legal ground therefor being established, be set forth in full herein. Omitting the formal portions of the affidavit, same is as follows:

"Eva Slifka, formerly known as Eva Zeig, being first duly sworn on oath, deposes and says:

"1. That she is the plaintiff in the above-entitled action.

"2. That on the 27th day of February, 1947, this Honorable Court granted to plaintiff an absolute decree of divorce from defendant, all of which appears from the records and files of said action, to which reference is hereby made and which is incorporated herein as if set forth in haec verba.

"3. That plaintiff, not desiring a divorce, had been coerced, threatened, intimidated and forced by the defendant, his agents and employees, to obtain said divorce; that said coercion, threats, intimidation and force occurred shortly after plaintiff married defendant on July 25, 1946, and continued to and including the date of the divorce, namely, February 27, 1947.

"4. That on or about December 19, 1946, a separation agreement was entered into between plaintiff and defendant, based upon representations made by defendant to plaintiff that defendant was worth between $50,-000.00 and $75,000.00; that on the basis of these figures the separation agreement provided for payment to plaintiff of $22,000.00 in installments; that plaintiff received $13,500.00, and that before the balance was paid to plaintiff the defendant died, on or about the 12th day of March, 1947; that it appears defendant left an estate of approximately $400,000.00; and that plaintiff is informed and does believe and upon such information

and belief alleges that as of December 19, 1946, the date the separation agreement was entered into, defendant was worth approximately $400,000.00, which information defendant and his attorneys willfully kept from the plaintiff.

"5. That during the time plaintiff was in Nevada establishing her residence for divorce, defendant caused her to be visited and spoken to by numerous and sundry underworld characters who warned her not to leave Nevada without a decree of divorce, and threatened her with bodily harm if she did not procure her divorce.

"6. That plaintiff would not have entered into the aforementioned separation agreement, which is a part of the files of this action, had she known the true worth of defendant.

"7. That plaintiff would not have obtained a decree of divorce if she had not been threatened with bodily harm by defendant and his agents, attorneys and employees.

"8. That because of defendant's fraudulent representations said separation agreement was entered into so that in the event of defendant's demise, plaintiff would not be entitled under the laws of New York to elect to take a share of his estate."

It may be noted that neither the said notice of motion nor the above-mentioned and quoted affidavit in support thereof has been served upon the executors of the estate of Joseph Zeig, deceased.

On November 6, 1947, the law firm of Jones, Wiener & Jones filed in said court a notice of motion and a petition that Louis Wiener, Jr., be permitted to appear in the said action as amicus curiae, and to make an oral argument in said cause upon the questions of law therein involved.

On November 21, 1947, Messrs. Morse & Graves, plaintiff's attorneys, caused to be filed in said district court a "Notice of Motion for the entry of an Order making Raymond Ochacher and Harry Etra, Executors

of the Estate of Joseph Zeig, parties to the above Proceeding." This notice of motion was addressed to "Raymond Ochacher and Harry Etra, Executors of the Estate of Joseph Zeig, deceased, and to Jones, Wiener & Jones, Esqs., and Etra & Etra, Esqs., and Earl & Earl, Esqs., Attorneys of record, your attorneys," and was supported by the affidavit of Harold M. Morse. The affidavit of Mr. Morse, omitting the merely formal portions, is as follows:

"Harold M. Morse, being first duly sworn on oath, deposes and says:

"1. That he is one of the attorneys for the plaintiff in the above entitled action.

"2. That he has been informed and does believe, that Joseph Zeig departed this life testate in New York City, New York; that his will was duly admitted to probate on April 9, 1947, in the Surrogate's Court of the State of New York, held in and for the County of New York.

"3. That Raymond Ochacher and Harry Etra were duly appointed executors for the Estate of Joseph Zeig, deceased, and that they, and each of them, duly qualified as such and are now acting as executors of said estate.

"4. That Etra & Etra, Esqs., whose office address is 527 Fifth Avenue, Borough of Manhattan, County, City and State of New York, are the attorneys of record for said executors, and that said attorneys have employed the legal firm of Jones, Wiener & Jones of Las Vegas, Nevada, to represent the interests of said estate in the pending motion by the plaintiff in the above captioned court and cause to set aside and vacate the judgment and decree of said court made and entered on February 27, 1947.

"5. That Louis Wiener, Jr., of the law firm of Jones, Wiener & Jones, Las Vegas, Nevada, has filed herein a Notice of Motion for permission to appear and argue the motion set forth in the preceding paragraph as amicus curiae without appearing generally in said action.

"6. That upon the death of Joseph Zeig, affiant is informed and believes that all authority for Earl & Earl, Esqs., of Las Vegas, Nevada, who during the life time of Joseph Zeig had appeared for him, ceased and terminated; and that therefore the executors of the estate of Joseph Zeig, deceased, above named, are necessary parties for determination of the pending motion of the plaintiff herein.

"7. That this is a proceeding in rem, and this Honorable Court has jurisdiction of the subject matter of the entire litigation and of the plaintiff's pending motion herein, and of the persons of the executors heretofore named."

The said notice of motion to make said executors parties, and the said affidavit in support thereof, were personally served upon Louis Wiener, Jr., Esq., in Las Vegas, Clark County, Nevada, on the 14th day of November, 1947, the affidavit of service on said date having been made by Lucille Thacker. On the 18th day of November 1947, Israel W. Tannenbaum (as appears from a copy of his affidavit in the bill of exceptions upon this appeal), "at No. 527 Fifth Avenue, in the County, City and State of New York, * * * served the foregoing notice of motion, returnable on December 5, 1947, and a copy of the affidavit of Harold M. Morse, verified the 13th day of November, 1947, upon Harry Etra, Esq. of the law firm of Etra and Etra, by leaving copies thereof personally with the said Harry Etra."

On December 4, 1947, the motion of Mr. Wiener for leave to appear as amicus curiae, and the motion of the plaintiff to make Messrs. Ochacher and Etra, said executors, parties to the proceeding upon the motion to set aside and vacate the decree, each came on for hearing in Department 2 of said Eighth judicial district court, the Hon. A. S. Henderson, district judge, presiding. Mr. Wiener presented his said motion to appear as amicus curiae, testified under examination by Mr. Graves, and the court ordered that said motion be granted. Mr.

Graves thereupon presented to the court the motion to make said executors, Ochacher and Etra, parties to said proceeding, and, in support of such motion offered in evidence all the records, pleadings and files of said divorce action and of said proceeding, including the affidavit of Harold M. Morse, Esq., in support of said motion. Mr. Wiener then objected, and Mr. Graves presented his argument in support of his motion, and Mr. Wiener argued in opposition thereto. The court thereupon ordered the matter submitted on briefs, and, on said December 4, 1947, plaintiff served and filed "Plaintiff's Opening Brief," consisting of less than two pages, and which contained the following significant statement:

"As was pointed out to the Court and counsel, and the Amicus Curiae concurred, California takes the position that an executor is a necessary party to a proceeding of this type, and in fact follows such procedure. Plaintiff relies for this proposition on the case of Raps v. Raps, Cal.App., 119 P.2d 187, a California case.

"This is the sole proposition requiring authority at this time inasmuch as in an in rem proceeding, which is admitted, this Honorable Court has jurisdiction of the subject matter and of the persons of the executors of said estate. As pointed out in the Raps case supra, said executors are necessary parties in order for any order of this Court to be binding upon the estate of Joseph Zeig, deceased.

"During the argument this morning the Amicus Curiae went into the merits of the main motion. We submit that such argument is irrelevant, incompetent and immaterial at this time. Furthermore, there are no counter affidavits resisting said motion. It is submitted that this Honorable Court will follow the California Rule and will not be committed to the midwest rule as expounded by Amicus Curiae. We feel that the Raps case is sound authority for the granting of said motion."

On December 6, 1947, a brief entitled "Defendant's Reply Brief," and signed, "Jones, Wiener & Jones by

Louis Wiener, Jr., Amicus Curiae," was filed, and served on Messrs. Morse & Graves. This brief consisted of more than seven pages, and expressed certain legal questions which the amicus curiae insisted went to the court's jurisdiction. Mr. Wiener contended that the proper solution of those questions disclosed that the court was without jurisdiction even to make the order sought by plaintiff, to substitute the New York executors in place and stead of the deceased defendant.

Plaintiff, on December 12, 1947, by her attorneys, Messrs. Morse & Graves, filed her reply brief, of slightly more than one page, reiterating that the court should follow the California doctrine as set forth in Raps v. Raps, Cal.App., 119 P.2d 187, cited in plaintiff's opening brief, and grant the motion to substitute the executors. In said reply brief, plaintiff's attorneys answered the discussion as to the merits on the principal motion, and as to the jurisdictional questions necessarily involved in relation thereto, in one paragraph, which related to the difference between intrinsic fraud and extrinsic fraud, and contended that the notice of motion to vacate the decree, and the affidavit in support thereof, set forth, in counsels' opinion, "both intrinsic and extrinsic fraud; the extrinsic fraud relied upon being in connection with the execution of the property settlement agreement."

The matter being thus submitted upon the briefs, the district court, on December 22, 1947, rendered its decision, in writing. The concluding paragraph of such decision is as follows:

"For the reasons above stated, the notice of motion to set aside and vacate the judgment and decree of divorce heretofore granted, is denied, and the notice of motion for an entry of an order making Raymond Ochacher and Harry Etra, executors of the estate of Joseph Zeig, parties to the above proceeding is also denied."

The plaintiff in the court below has appealed to this court from the two orders embodied in the foregoing

paragraph, plaintiff's (appellant's) assignments of error being as follows:

"Assignment of Error No. 1. The Trial Court erred in denying plaintiff's Motion for entry of an Order making Raymond Ochacher and Harry Etra, Executors of the Estate of Joseph Zeig, parties to the proceeding.

"Assignment of Error No. 2. The Trial Court erred in denying plaintiff's Motion to Set Aside and Vacate Judgment and Decree."

Upon the hearing on December 4, 1947, only the motion to make the executors parties was before the court. It was that motion alone which was presented, argued and submitted. The making of the executors parties was a necessary prerequisite to plaintiff being able to proceed with her principal motion. In any action or proceeding, other than a mere ex parte proceeding, there must be at least two parties before the court for the court to have jurisdiction to proceed. This first step of substituting the executors was required to be taken, and valid service upon the substituted executors secured, and their appearance or default entered, before the principal motion, that is, the motion to vacate and set aside the divorce decree, could be set down for hearing and argument.

The district court's theory of the matter is readily apparent from the decision. The learned district judge concluded that because of the death of the defendant and the nonresidence of both parties at the time of his death, and the absence of any property of the marital community or of the estate from within the jurisdiction of the court, that the court, upon the former husband's (defendant's) death, completely lost jurisdiction over the res marital status, and had no power or authority to modify or vacate the decree, also that the allegations in the notice of motion to vacate, and the statements in the affidavits of the plaintiff in support thereof, were not sufficient to constitute extrinsic fraud as a basis for the

relief sought. This being the learned district judge's view as to both the important elements of fact and law involved in the principal motion on its merits, he considered the making of the executors parties a useless act. The learned district judge's reasoning as to the matter of making the executors parties clearly appears, repeatedly, in his decision. The following is quoted from pages 4 and 5 of the decision:

"The main question before the court now is the motion to make said executors parties to this action, but the court, in determining said motion, must take into consideration the effect thereof, and whether or not the making of said executors parties to the action is of any avail to the plaintiff in said action. In other words, what would be the use of making the executors of the estate of the deceased parties to this action, if the court has no jurisdiction to set aside the decree of divorce, which opinion the court now holds. In the first place, no proper service was ever made in this case, for from the record it appears that the service was made upon one Marion Earl, attorney at law at Las Vegas, Nevada, who was the attorney for the defendant in the original divorce action, but the court is of the opinion that the relation of attorney and client dies upon the death of the client, and therefore the service made upon Mr. Earl was of no avail. Again, there is no property within the jurisdiction of this court. Further, it appears to the court that the court has no jurisdiction to set aside a decree of divorce which would decree the plaintiff the wife of a dead man.

"In plaintiff's brief on plaintiff's motion for entry of an order making the executors parties to the proceedings, plaintiff submits 'The sole question at this time is not on the merits of the motion to vacate the decree, but on the jurisdiction of the court to make such an order and as to whether or not said executors are necessary parties.' This may be true, but as said heretofore, what

would be the use of making the executors parties to the action if the court has no jurisdiction on the original motion?

\*    \*    \*    \*    \*    \*    \*

"And again, the motion of the plaintiff to set aside the decree of divorce is made upon the grounds of fraud, and fraud alone. All of the fraud, in the opinion of the court, however, is intrinsic fraud and not extrinsic fraud, and therefore, the court would not have jurisdiction to set aside the decree of divorce, and it would be of no avail in this proceeding to make the executors parties defendant to said motion, said executors being nonresidents of this state, party plaintiff also a nonresident, party defendant deceased, no local attorney of record upon whom service can be made, and no property located within this state."

■ But, as applied to the situation in the instant proceeding, this "practical utility" theory upon which the learned district judge acted is unsafe to follow, and might readily lead to gravely unjust consequences. It is elementary, under our system of legal procedure, that every one who may be materially affected by the action of a court in a legal proceeding is entitled to be heard, or, as ordinarily expressed, "entitled to his day in court." If the court did have the right or jurisdiction to determine without a hearing those important questions of fact and law favorably to the unrepresented executors of the estate, as was done, as to the element of extrinsic fraud and as to the question of the effect in the instant case of the death of the deceased upon the jurisdiction of the court, the court would, equally, have the right and jurisdiction to decide such questions adversely to the interest of such executors and estate without their even being served or accorded their day in court.

It is beside the point to say that the court would not have done so—that it was only because its views were thoroughly favorable to the persons of which the

court had no jurisdiction that it ventured to do so, for in many cases it might become a close question, under certain conceivable circumstances, whether the results of certain action in a case would be favorable or unfavorable to an unrepresented person who should have been made a party, but was not.

The above indicated questions of extrinsic fraud and the effect of the death of Joseph Zeig in the still pending divorce action, as such questions appeared or were revealed as being involved in the instant proceeding, upon the motion to vacate the decree, presented no "open and shut" proposition, easy of correct determination. Assuming, for the moment, the question of the legal sufficiency of the showing of extrinsic fraud to have been properly raised by executors who have duly appeared and moved to strike, or taken other appropriate action, plaintiff's attorneys could plausibly, perhaps reasonably, have argued that the fraud alleged as to concealment by the deceased of his net worth did not become known to the plaintiff until after the death of her divorced husband, and therefore she could not have revealed same to her counsel or the court in time to have been of any avail in shaping her course as to whether to proceed with the divorce action, or as to what, if any, alternative step she should take to protect her just property and financial rights, in view of her husband's wealth being much greater than he had represented; and that, therefore, the fraud was clearly extrinsic. Under such circumstances, the situation would be quite different from that in Jorgensen v. Jorgensen, Cal.App., 187 P.2d 915, cited in the answering brief of amicus curiae, in which the plaintiff wife became aware of the fraud or mistake more than a month before the final decree of divorce, and, hence, could have sought advice from her counsel, and taken such steps for her protection as might be indicated.

And as to the allegations in the notice of motion to

vacate, and the supporting affidavit, in which latter it is stated by the plaintiff: "5. That during the time plaintiff was in Nevada establishing her residence for divorce, defendant caused her to be visited and spoken to by numerous and sundry underworld characters who warned her not to leave Nevada without a decree of divorce, and threatened her with bodily harm if she did not procure her divorce," whilst on its face this would seem to charge intrinsic, rather than extrinsic, fraud, plaintiff's counsel might plausibly have argued that such situation is not comparable to Calvert v. Calvert, 61 Nev. 168, 122 P.2d 426, 427, in which the husband accused of coercion was in Georgia—too far away to exercise other than constructive coercion; that in the instant case the situation alleged is very different—that the persons threatening plaintiff were underworld characters who visited and spoke to her threateningly, in Nevada, thus being in a position to carry out their threats of bodily harm if she failed to obtain a divorce, and that they were characters likely to retaliate viciously if she left Nevada without a divorce, and that under such extreme circumstances the theory of the protection of "counsel of her own choosing" and of the court, as in Calvert v. Calvert, supra, should not be applied.

On the other hand, if defendant's executors were made parties, opposing counsel could plausibly, and perhaps reasonably, contend that plaintiff, in her motion papers, should have definitely alleged or stated when she became aware of the alleged concealment and/or misrepresentations as to defendant's wealth, and have shown that same was *after* the divorce decree was granted, in order to make out a case of extrinsic fraud; or defendant could, of course, have met the situation factually, by stating by way of counter-affidavit that plaintiff knew the facts as to defendant's wealth before she executed the agreement, and that nothing was "kept from her" and no misrepresentation made.

And as to the matter of coercion, counsel for the executors could either argue that the facts alleged were not so different from those in Calvert v. Calvert, supra, as to preclude the application of the rule enunciated in that decision, or, they could have met the situation factually, if the actual facts justified, by categorically denying the statements of plaintiff as to coercion, in paragraph 5 of her affidavit.

So much as to the element of extrinsic fraud, without intending to commit ourselves in the least as to which of those possible contentions of opposing counsel is the more appealing. Some consideration in detail is presented herein upon the question, due solely to our desire to illustrate how exceedingly imprudent it is were it legally permissible, to predetermine, ex parte, without either side knowing that it is to be determined, and ostensibly as an aid in determining a preliminary and minor matter (whether to make the executors parties), a question of both fact and law, for instance, the presence or absence of extrinsic fraud, a question of the greatest importance in proceedings such as are now before us. The services and assistance of counsel, both in developing the pleadings, or equivalent proceedings, and in research, presentation and argument, are, it seems to us, indispensable instrumentalities toward the attainment of justice, and neither time nor notice nor such services should be dispensed with, except under circumstances of extreme necessity—certainly, not for the purpose of avoiding what the lower court considered merely a useless act.

Equally difficult of correct determination was, and is, the question of the effect, in the divorce action and upon the jurisdiction of the court, of the death of the defendant about two weeks after the divorce was granted and the decree entered. This court has repeatedly held, in effect, that until the end of the current term (in the early day cases following the common law) the trial

court's jurisdiction, validly acquired, continued for the purpose of such correction, modification or vacation of the court's judgments and decrees as might be shown to be required by justice or equity. The favored expression in that connection was, "remains in the breast of the court." And when terms of court were abolished, and there was no longer any period of time which could be properly designated "until the end of the term," an equivalent period of six months was provided by district court rule XLV, for the same purposes. A few of the numerous Nevada cases in point are: Sweeney v. Sweeney, 42 Nev. 431, 179 P. 638; Lauer et al. v. Eighth Judicial District Court, 62 Nev. 78, 140 P.2d 953; Schneider v. Second Judicial District Court, 64 Nev. 26, 176 P.2d 797.

Lauer v. Eighth Judicial District Court, supra, was a case in which the defendant husband had died subsequent to divorce, but much later thereafter than six months, both parties, at the time of his death being nonresidents of Nevada, and no property being left by him within the State of Nevada. The plaintiff in that case made a motion to set aside the decree of divorce, upon the ground of extrinsic fraud, more than six months after the rendition of the decree. The plaintiff, Mrs. Adams, claimed she had been coerced and intimidated by her husband, or by his agents, attorneys and employees, into obtaining a divorce, and that she had been misled into entering into a property settlement agreement, because of lack of knowledge of herself, and of her attorneys outside New York, as to the New York law of dower. The facts were, in many respects, similar to those in the instant case. The gist of this court's holding in that case was that plaintiff could not, because of the time limitation of rule XLV, proceed by motion at a time after six months from the date of the decree had elapsed, but pointed out that when extrinsic fraud was sufficiently alleged the court would still have juris-

diction, in an independent suit in equity, to purge its records of extrinsic fraud, if same were sufficiently established. It was not held in that case that the death of the defendant, or the absence of property in the state, or nonresidence of the parties, or all of them together, had operated to deprive the court of jurisdiction, but merely that the plaintiff could not, by reason of the effect of district court rule XLV, proceed by motion at a time more than six months after the entry of the judgment and decree.

The difficulty, from a legal standpoint, of correctly determining this question, in view of the existing situation in the instant proceeding, is further manifested by the fact that the authorities are, in many instances, in direct conflict. Amici curiae has presented and cited cases applying what he has designated as the "Midwest" Rule. These cases are from Wisconsin, Kansas and Tennessee. The principal cases applying that rule, which, in substance is, that death of a divorce defendant deprived the court of further jurisdiction to modify or vacate the judgment or decree of divorce, even for extrinsic fraud, unless there is property within the state, or one of the parties, at least, was a resident when the death occurred, are: Moyer v. Koontz, 103 Wis. 22, 79 N.W. 50, 74 Am.St.Rep. 837; Blair v. Blair, 96 Kan. 757, 153 P. 544; and Rose v. Rose, 176 Tenn. 680, 145 S.W.2d 773.

Leading cases applying the other rule (and cited by plaintiff), which, briefly stated, is that jurisdiction of the court, once legally acquired, of the subject matter and of the parties, does not cease upon the death of a defendant against whom a divorce is decreed, but, being an action in rem, the court retains jurisdiction of the res, even though the death of one of the parties has intervened, and, particularly, jurisdiction of its own records of the action and proceedings, and to purge such records of extrinsic fraud, if sufficiently established and timely

presented, are: Britton v. Bryson, 216 Cal. 362, 14 P.2d 502, and McGuinness v. Superior Court, 196 Cal. 222, 237 P. 42, 40 A.L.R. 1110.

■ Sound judicial discretion clearly indicates the unwisdom and impropriety (even if the executors in the instant case had been validly served and the court had acquired jurisdiction of them before rendering its decision) of any indirect, collateral predetermination, in considering a minor preliminary motion, of a question as important and of such far-reaching consequences and effect as the difficult question just considered and concerning which such eminent authorities are in direct conflict. The determination of this question was directly involved in the proceedings upon the principal motion to vacate the divorce decree, and not properly before the court, or submitted to the court, upon the motion to make the executors parties, which latter was the only motion which, under the rules of orderly procedure, was then before the court. Upon a question involving the difficulties such question involved, no court should undertake to commit itself in advance of formal setting and opportunity for preparation and argument, in order that, so far as humanly possible, the court may be aided by the research and efforts of respective counsel. It was natural, perhaps, in view of the confusion created by commingling the consideration of these two motions when only the preliminary, minor motion to make the executors parties was before the court, for the learned district judge, having undertaken to determine, collaterally and incidentally, the questions necessarily determinative of the principal motion, to advance a step further and fall into the error, still more serious, of finally determining, ex parte, the motion to vacate the decree, before making the executors parties and before valid service upon them, and when they were not before the court and could not be bound by any judgment rendered. Obviously, the court could not then make any valid determination of the motion to vacate, for the

further reason that such motion had not been set for hearing, that its setting had not been requested, that no hearing had been had thereon, and neither the plaintiff nor her attorneys, whose motion it was, knew it was to be deemed submitted, or to be considered by the court. It clearly appears that neither side had, properly speaking, their day in court, and that the court was entirely without jurisdiction to make, and could not under such circumstances make, a valid determination of the motion to vacate the judgment or decree of divorce, and its attempt to do so was error. Consequently, the conclusion is inevitable that the district court erred in denying plaintiff's motion to set aside and vacate the judgment and decree. Appellant's (plaintiff's) assignment of error No. 2 is, therefore, well taken.

██ Referring to assignment of error No. 1, which is, as above stated, that "the trial court erred in denying plaintiff's motion for entry of an order making Raymond Ochacher and Harry Etra, executors of the Estate of Joseph Zeig, parties to the proceeding," the learned district judge has stated in his decision that "no proper service was made in this case." He then discussed the service upon Marion Earl, Esq., attorney for the defendant in the divorce action, and concluded, rightly we think, that, because of the death of Joseph Zeig such service was ineffective; but did not comment or pass upon the validity of the service, in New York City, upon Harry Etra, Esq., of the law firm of Etra & Etra. After a careful study of this phase of the case, we are convinced that the New York service was also invalid. The service of notices and papers is provided for by chapter 48 of the Nevada Civil Practice Act, such chapter consisting of sections 425–433, same being N.C.L.1929, vol. 4, secs. 8914–8922, inclusive. It is well settled that when the legislature has provided the method and manner of service, same is exclusive. 39 Am.Jur. sec. 9, p. 237, and cases cited in footnote 4. Sec. 8916, vol. 4, N.C.L.

1929, provides that "the service may be personal, by delivery to the party or his attorney, on whom the service is required to be made, or it may be as follows:

"1. If upon an attorney, it may be made during his absence from his office by leaving the notice or other papers with his clerk therein, * *· *.

"2. If upon a party, it may be made by leaving the notice or other paper at his residence, between the hours of eight in the morning and six in the evening, with some person not less than eighteen years of age; * * *."

When the notice is one required in pending litigation, it is obvious that the foregoing provisions have reference only to service within the territorial jurisdiction of the court in which the litigation is pending. This is so for several reasons. The provisions relative to serving the attorney manifestly mean the local or resident attorney who is handling the litigation, and who is in a position to act therein promptly and with due authority. Even if a nonresident attorney is employed in the particular litigation, he is, by statute in this state and in most states, required to have a resident attorney associated with him in order to make a valid appearance. Furthermore, the provisions of our statute above quoted, N.C.L. 1929, vol. 4, sec. 8916, providing, alternatively, for service upon the party by leaving at his residence or place of abode in his absence, under certain specified conditions, and for service upon the attorney by leaving at his office in his absence, under conditions prescribed in the statute, thus providing a method of constructive service to be followed if serving within the state, would, necessarily, have to be discarded as to service outside the state, for two reasons:

1. To require detailed provisions such as these to be observed in making service in a foreign state would be so confusing and cumbersome to those attempting to serve in the foreign jurisdiction in which the application of such provisions were attempted that same would be highly impractical. Officers or persons making con-

structive service, in a particular state, of papers or process received for that purpose from a sister state or foreign country would find it practically impossible efficiently to perform the duties that a spirit of comity prompts them to undertake, if burdened with the duty of acquiring and applying adequate knowledge of the detailed provisions for service of the many sister states or countries which such officers serve. In large cities, particularly, such officers would be seriously confused and handicapped if such detailed statutory provisions of constructive service, provided for in other states or countries, were required to be followed in making constructive service. Whether to provide for such outside service or not is, of course, a matter of public policy for the legislature to determine, but common sense and matters of practicability may be considered in arriving at what the legislative intention was. It cannot reasonably be believed that the Nevada legislature, in enacting such provisions, intended them to be employed in making service outside the state.

■ 2. Service by leaving at one's office or place of abode in his absence, under conditions prescribed by statute, is generally deemed constructive service. See Bicknell v. Herbert, 20 Haw. 132, Ann.Cas. 1913A, 1186, affirmed in 233 U.S. 70, 34 S.Ct. 562, 58 L.Ed. 854; 42 Am.Jur. sec. 51, p. 42. To construe N.C.L.1929, vol. 4, sec. 8916, to authorize that method of service outside the state would be to authorize constructive service upon constructive service, or, at least, service doubly constructive. By analogy, reference may be made to the provisions of the statute, N.C.L.1929, vol. 4, sec. 8583, relating to constructive service of summons in lieu of publication, if publication has been ordered. Such provision clearly provides that the equivalent service out of the state shall be personal, and provides for no alternative or constructive method, such as leaving at defendant's place of abode. It is not to be lightly concluded that the legislature, in the case of service of notices and

papers outside the state, would have so far departed from the usual custom and the provisions of similar statutes as to authorize, in serving outside the state, a manner or method of service which would make same, not only doubly constructive, but dependent for its validity upon the detailed provisions of the statutes of the state from which the papers or process were forwarded for service.

■ Another reason why such section 8916 was obviously not intended by the legislature to authorize service outside the state is the absence of any provision for publication. This court has held that in order for publication to be effective it must be authorized by statute. State ex rel. Sparks v. Wildes, 37 Nev. 55, 56, 65, 139 P. 505, 142 P. 627. If the legislature had intended, by sec. 8916, N.C.L. 1929, vol. 4, to authorize service without the state, we believe proper deference to outside sovereignties would have impelled a provision for publication, which would have required, as a foundation, an affidavit for publication stating facts showing the necessity, because of nonresidence, departure from the state, etc., of such outside service. 42 Am.Jur. pp. 53, 54, citing Piggly-Wiggly Georgia Co. v. May Investing Corp., 189 Ga. 477, 6 S. E.2d 579, 126 A.L.R. 1465.

So, from what our statute, section 8916, contains, as well as from what is omitted from its provisions, it is sufficiently indicated that such section was not intended by the legislature to authorize the service of notices and papers outside the state.

■ When we consider, in connection with such indicia, the proper application of the fundamental principle of statutory construction that statutes in derogation of the common law should be strictly construed (50 Am. Jur., sec. 402, p. 425), and constructive service being in derogation of the common law, and there being no expression whatever in the statute indicating that it is intended to authorize service outside the state, it is clear that by section 8916 the legislature of the State of

Nevada did not intend to authorize personal service outside the state, either upon a party or upon his attorney.

We are not so certain, however, as to sections 8918–8920, N.C.L.1929, vol. 4, authorizing service by telegraph or by mail. As plaintiff's attorneys have pointed out, section 8920, as amended in 1941, Stats. 1941, p. 6, provides that, * * * "if within a given number of days after such service a right may be exercised, or an act is to be done by the adverse party, the time within which such right may be exercised or act be done, is extended one day for every two hundred fifty miles of distance between the place of deposit and the place of address. Such extension, however, not to exceed twenty days in all." It seems only fair to say that the language of this section as amended does indicate, by implication, that the legislature contemplated service by mail beyond the boundaries of this state. This question is not before us, however, in the instant proceeding (except, generally, as to the construction of said chapter 48), as the service upon Mr. Etra was not by mail, but upon him personally, in New York. Hence, we express no opinion upon it, nor do we indicate what our construction of section 8920 would be if the question of whether or not it authorizes service by mail outside the state were before us for decision.

For the reasons stated and indicated, we are of the opinion that the attempted service, at No. 527 Fifth Avenue, in the county, city and State of New York, on the 18th day of November 1947, of the notice of motion for the entry of an order making Raymond Ochacher and Harry Etra, executors of the estate of Joseph Zeig, parties to the proceeding, and of the affidavit of Harold M. Morse, Esq. in support thereof, "upon Harry Etra, Esq., of the law firm of Etra & Etra, by leaving copies thereof personally with the said Harry Etra," was unauthorized by any law or statute of this state then in force and effect, and was entirely void.

■■■■ ⁎ But was any notice, or service of notice, neces-sary in the matter of the motion, in the instant proceed-ing, to substitute Raymond Ochacher and Harry Etra, as executors of the estate of Joseph Zeig, deceased, in place and stead of the deceased, in the matter of the proceedings upon plaintiff's motion to vacate the said divorce judgment and decree? Our statute, section 62 of chapter 6 of the Nevada Civil Practice Act, being N.C.L.1929, vol. 4, sec. 8561, was taken from, and is essentially the same as, section 385 of the California Code of Civil Procedure, which has been repeatedly con-strued by the courts of California to authorize such substitution upon an ex parte motion. The notice and service required is not of the *motion to substitute,* but of the *substitution* or the order therefor, after same has occurred. The motion is authorized in an action in which the cause of action survives, as in an action or proceeding in rem, and is granted almost as a matter of course, and without any extensive proceeding. All that has to be shown is the demise of the deceased and the appointment and qualification of his personal repre-sentative, or representatives (executor or executors, administrator or administrators). The court having jurisdiction of the subject matter of the action and of the person of the deceased prior to and at the time of his demise merely substitutes his personal representa-tive, so that the action may proceed to the same extent that it could have been carried on against the deceased party defendant. Valid service, of course, must be, obtained *after substitution,* not only of the order sub-stituting the personal representative, but also of process in the action or proceeding. In the instant case, this would be service of the notice of motion to vacate the divorce judgment and decree, and of the supporting affidavit, or affidavits.

The proper doctrine, as we view it, is clearly stated in 1 Cal.Jur., secs. 37, 38, pp. 66–68. We quote the following from said sec. 37, p. 66:

"Sec. 37. Method of Substitution.—The practice is well settled, in case of the death or disability of a party, for the court to allow the substitution of the personal representative upon suggestion of the party's death and an ex parte motion showing the appointment and qualification of the executor or administrator. This has been the uniform practice in this state from its organization and no inconvenience or injustice seems to have resulted. * * *"

The following cases are cited, in footnotes 5 and 6, in support of the text: Campbell v. West, 93 Cal. 653, 29 P. 219, 645; Kittle v. Bellegarde, 86 Cal. 556, 25 P. 55; Taylor v. Western Pac. R. Co., 45 Cal. 323; Ex parte Connaway, 178 U.S. 421, 20 S.Ct. 951, 44 L.Ed. 1134, see, also, Rose's U. S. Notes.

Our statute having been adopted from the like provision in the California Code of Civil Procedure, we shall follow the usual rule that the Nevada legislature, in adopting the statute, is presumed to have intended to adopt the same as construed by the highest court of California.

We believe, therefore, that the district court should, notwithstanding the absence of valid service upon the executors of the estate of Joseph Zeig, deceased, of the notice of motion to substitute, and of the accompanying affidavit, have disregarded altogether the matter of the failure or defect of service, and treated the attempted service merely as surplusage, and should have granted the motion of plaintiff and ordered the substitution of the executors, Ochacher and Etra. Appellant's (plaintiff's) assignment of error No. 1 was, therefore, well taken.

It necessarily follows that the order of the district court denying plaintiff's motion for the entry of an order making Raymond Ochacher and Harry Etra, executors of the estate of Joseph Zeig, parties to said proceeding, and that court's order denying plaintiff's motion to set aside and vacate the said judgment and decree of

divorce, are, and each of them is, reversed, and the cause remanded, and the district court is hereby ordered to make and enter its order substituting said executors for the deceased in the instant proceeding, and said district court is further ordered to place such proceeding upon its calendar upon the request of the attorneys for plaintiff, if and when they have accomplished service upon said executors of such order of substitution, and of such notice of motion to set aside and vacate the judgment and decree of divorce and the supporting affidavit, and to provide for such further proceedings in accordance herewith, as are appropriate in the' premises.

EATHER, C. J., and BADT, J., concur.