In the Matter of the Estate of FRANK VELTRI, Deceased.

Surrogate's Court, Kings County, April 21, 1952.

*Vosseler & Donnelly* for Dorothea V. Andersen and another, petitioners.

*Jacob J. Kramer* and *Jay O. Kramer* for Ida E. Veltri, respondent.

RUBENSTEIN, S. The petitioners are the daughters and only children of the decedent and his first wife. They seek to revoke letters of administration issued to respondent. These letters were issued upon her allegation that she was the widow of decedent. Petitioners predicate their petition on the ground that the letters were issued because of respondent's false suggestion that she was such widow. She had been married previously to one Parma. Petitioners attack a decree of divorce from Parma, obtained in Nevada, as void and not entitled to full faith and credit in this State. Whether that decree is entitled to full faith and credit is the crucial question involved.

On April 12, 1925, respondent married Parma. She was then a teacher in the New York City school system. Sometime after 1929, she left Parma and went to live with her father in a house owned by the father in which she occupied her own apartment. In May, 1950, she gave up her apartment, sold her furniture and household goods, and until June 30, 1950, lived with her father in his apartment.

She had sought legal advice as to the procedure and requirements of Nevada law in relation to divorce. Accordingly, when school closed on June 30, 1950, she prepared to leave New York and on the following day, together with decedent, she went to Reno. When the statutory requirement for residential purposes had expired, she instituted an action for divorce upon the ground that she and Parma had lived separate and apart for more than three years without cohabitation. Service on Parma was by publication and, in addition, Parma was served with a copy of the summons and complaint in Brooklyn, N. Y. In due course, the matter came on for hearing and the District Judge granted a decree dissolving her marriage to Parma. This decree was entered September 23, 1950. The exemplified copy of the Nevada record in evidence indicates that the defendant failed to appear, answer or otherwise plead within the time required by law and his default was entered.

On the same day a District Judge, other than the one who had granted the decree of divorce, married respondent to decedent. Decedent, it may be observed, had been in business in the city of New York for about forty years and was so engaged prior to his departure to Reno and upon his return. After arriving here,

respondent and decedent lived together in this borough until decedent's death.

With reference to respondent's claim that she took a leave of absence from her teaching position, it may be observed that she did not leave New York until the termination of the school session and her return was shortly after the new term had commenced. The court indulges in the inference that her return to New York was not precipitated, as she asserts, by news of her son's imminent induction into the armed forces but rather because the mission to Nevada had been completed and she desired to resume the teaching position which she had temporarily left.

On October 9 or 10, 1950, respondent and decedent registered to vote in the November, 1950, election in this county and both cast their votes in the November election. It may be remarked here that section 150 of the Election Law defines a qualified voter as one who, *inter alia,* " has been an inhabitant of the state for one year next preceding the election, and for the past four months a resident of the county, city or village   *   *   * in which he or she offers his or her vote ". (See, also, *State ex rel. Dixon* v. *Van Patten,* 26 Nev. 273.)

After respondent's appointment as administratrix, petitioners engaged counsel and as a result of several communications a conference was had between respondent, petitioners and their attorneys. At that conference the claim was asserted that respondent was not the widow and her resignation was demanded. This was refused. Nevertheless, the parties arranged for the sale of decedent's automobile to respondent for $1,200, $800 of which was to be paid by her to the petitioners and $400 retained by her. The administratrix, at petitioners' request, applied for an extension of decedent's license as an insurance broker in order to complete outstanding contracts and otherwise proceed to administer the estate. In addition, a written agreement was entered into signed by petitioners and respondent for the conduct of a business in which decedent held a substantial interest. It is stated in that agreement that respondent is decedent's widow.

Such are the facts upon which it is claimed, on the one hand, that the decree in Nevada was not an effectual dissolution of her marriage and, consequently, she is not decedent's widow, and, on the other hand, that the decree may not be attacked collaterally in this proceeding and, furthermore, petitioners are estopped from questioning respondent's status.

The decree of divorce assailed herein appears on its face to have been obtained regularly. Such a decree, we are told, is "a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact". (*Williams* v. *North Carolina*, 325 U. S. 226, 232.) This *Williams II* case further points out that the finding of domicile contained in Nevada decrees, when such decrees are called into question in a sister State, are entitled to the reciprocal duty of respect and more. And, as it was said, "The burden of undermining the verity that the Nevada decrees import rests heavily upon the assailant," (*Williams II, supra*, pp. 233–234). Nevertheless, however heavy the burden cast upon the assailant, in a proper case, a finding of domicile in Nevada does not foreclose a re-examination by a sister State of that very finding where domicile is the sole basis for the exercise of jurisdiction by the decreeing court.

Here the record shows and the court finds that the defendant in the divorce action in Nevada was served with a certified copy of the complaint and summons in the Borough of Brooklyn, State of New York; he never appeared in the Nevada action in any manner; he never contested the issue of his wife's domicile; he did not admit in the Nevada action her Nevada domicile; he was never served with process in Nevada; and he was never a resident of Nevada. Under such circumstances, the court holds that the decree ordaining respondent's domicile to be Nevada is subject to re-examination in this proceeding and to attack and nullification for lack of jurisdiction over the parties in a contested action. (*Williams* v. *North Carolina*, 325 U. S. 226, *supra*; *Rice* v. *Rice*, 336 U. S. 674; *Johnson* v. *Muelberger*, 340 U. S. 581; *Cook* v. *Cook*, 342 U. S. 126; *Sutton* v. *Leib*, 342 U. S. 402; *Brown* v. *Sheridan*, 83 Ga. App. 725; *Davis* v. *Davis*, 259 Wis. 1; see, also, 18 Brooklyn L. Rev. 340, and 26 St. John's L. Rev. 160.)

Bearing in mind the deference and respect to which the finding in the Nevada decree is entitled and the heavy burden resting upon petitioners of undermining the verity of the finding of domicile, this court, nevertheless, finds that petitioners have met that burden by the evidence adduced by them and further finds that at the time of the granting of the Nevada decree, and at all pertinent times prior and subsequent thereto, the respondent was not domiciled in Nevada, but that at all such times she was domiciled in the State of New York. The court therefore holds that the Nevada decree is not entitled to full faith and credit in this proceeding and that the Nevada decree was ineffectual to

dissolve the bonds of matrimony existing between the plaintiff and the defendant therein insofar as to create for respondent the status of a marriageable person with whom the decedent herein could have entered into a valid marriage.

Respondent urges, however, that *Johnson* v. *Muelberger* (*supra*) forbids the petitioners to attack the Nevada decree, calling attention to the rule there stated that "When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union." (P. 589.) The decision of the Supreme Court of the United States was predicated upon an interpretation of the Florida law, and specifically, upon language found in the case of *de Marigny* v. *de Marigny* (43 So. 2d 442) where the Supreme Court of Florida quoted with approval 1 Freeman on Judgments (5th ed., Vol. 1, p. 636, § 319): "It is only those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard *to some pre-existing right,* that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to impeach it *whenever it is attempted to be enforced against them* so as to affect *rights or interests acquired prior* to its rendition." (Italics by the Supreme Court of Florida.) From this language, the Supreme Court of the United States concluded that Florida would not permit Mrs. Muelberger, as a stranger, to attack the Florida decree of divorce between her father and his second wife as beyond the jurisdiction of the rendering court.

In the *Johnson* case the decedent appeared by attorney and interposed an answer denying the wrongful acts but not questioning the allegations as to residence in Florida. There the defendant appeared and was given a full opportunity to contest the jurisdictional issues. Such, too, was the situation in *de Marigny* v. *de Marigny* (*supra*) where the judgment assailed had been entered after both parties appeared in the action (see *de Marigny* v. *de Marigny*, 196 Misc. 719). In both the *Johnson* and the *de Marigny* cases, the courts were speaking in relation to the facts before them, namely, where both parties were before the court and a full opportunity afforded them to contest the jurisdictional issue.

In the *Johnson* case, the courts took pains to note that the decree was *res judicata* between the parties and specifically noted that at least some Florida cases intimated that the heir had a right, under Florida law, to question the validity of her

father's marriage to one claiming to be his wife. " This observation," said the court, " was not directed at circumstances where *res judicata* could bind the parent." (340 U. S. 587, n. 13.) And again in the *Johnson* case, if more were needed, the court said, " The later *Williams* case left a sister state free to determine whether there was a domicile of one party in an ' *ex parte* ' proceeding so as to give the court jurisdiction to enter a decree." (P. 585.)

Furthermore, an examination of the cases cited to support the quoted excerpt from Freeman on Judgments does not help respondent's contention that the rule there set forth applies to an instance such as this. Here the judgment questioned is void because there was neither domicile nor appearance by the parties and, thus, there was nothing upon which jurisdiction could have been bottomed. Two of those cases, *Matter of Pusey* (180 Cal. 368, 375) and *Harpold* v. *Doyle* (16 Idaho 671) on rehearing (16 Idaho 694) do not support respondent's contention. In fact, a footnote to Freeman on Judgments (5th ed., Vol. I, § 319, p. 637, n. 20) says that *Matter of Pusey* (*supra*) limits the rule that a third party's pre-existing rights must be prejudicially affected to cases where property rights have been adjudicated, and holds it inapplicable where a divorce decree, coming collaterally in question in a proceeding to probate a will, is attacked as void. In the *de Marigny* case itself (*supra*, p. 447) the Supreme Court of Florida immediately following its quotation from Freeman on Judgments (Vol. 1, p. 636, § 319, set out *supra*), stated that the same principle is enunciated in Corpus Juris Secundum (49 C. J. S., Judgments, § 414, p. 818). It is there said, " A stranger to the record, who was not a party to the action in which the judgment was rendered or in privity with a party is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, *unless the judgment is absolutely void*." (Emphasis supplied.)

The *de Marigny* case (*supra*, p. 446) moreover, called attention to *Hall* v. *Hall* (93 Fla. 709, 112 So. 622) and " particular attention " to pages 628–629 of volume 112 Southern Reporter. There, (in the *Hall* case, *supra*, p. 728) the Supreme Court of Florida quoted with approval from Nelson on Divorce and Separation (§ 1055) where the learned author commented on collusive divorce, saying, in part, " The decree, which is void

for lack of jurisdiction over the subject-matter, must always remain so, and no act of the parties can invest it with the force and vitality of a decree rendered by a Court of competent jurisdiction." The *Hall* case, on principles of equity, held that a party who had participated in the fraud on the court was precluded from attacking the decree. In the *Hall* case, as in the *Johnson* and *de Marigny* cases, there was jurisdiction of the parties.

In short, *Johnson* v. *Muelberger* (340 U. S. 581, *supra*) is not authority for respondent's position that the doctrine there stated extends to an " ex parte " divorce decree, or that it extends to anything other than an instance where there has been some form of submission by the parties to the jurisdiction of the rendering court. *Cook* v. *Cook* (342 U. S. 126, *supra*) expressly deferred consideration of a collateral attack on an " ex parte " decree.

Thus far this court has concerned itself with the faith and credit to be accorded an " ex parte " decree obtained upon allegation and proof of domicile when in fact such domicile did not exist. It has considered the doctrine of *Johnson* v. *Muelberger* (*supra*) and the Florida decision upon which it was predicated, to ascertain its applicability to the case at bar. But the court reaches the same result by giving to the language quoted above from the *Johnson* case its most broad and liberal interpretation. On general principles the court reaches the conclusion that Nevada would permit a collateral attack on its decree by these petitioners.

No Nevada case has come to the court's attention which, like *State ex rel. Willys* v. *Chillingworth* (124 Fla. 274) would appear to permit the petitioners herein to question the validity of respondent's marriage to their father. On the other hand, no controlling determination of the Nevada courts has been presented for consideration which would forbid their attack. The court is, therefore, at liberty to assume the law of Nevada to be in accordance with that generally applied elsewhere and consider the question on principle (*Adams* v. *Adams*, 154 Mass. 290) and determine the question under general principles of the common law.

Of course, the difficulty inherent in and the inconclusiveness of a determination of Nevada law has been indicated by Mr. Justice FRANKFURTER in his concurring opinion in *Sutton* v *Leib* (342 U. S. 402, 412, *supra*). The ascertainment of Nevada law by this court can be, in the very nature of things, only tentative and indecisive, because whatever view is taken may be authori-

tatively supplanted by the only court that can settle the issue, namely, the Supreme Court of Nevada.

In Nevada, the rule of decision is, in general, the common law. It has, however, been said that the legislative intention in adopting the common law was to adopt only so much of it as was applicable to Nevada's condition; such portions as are inconsistent with the spirit of Nevada's institutions are no part of the law of Nevada (*Reno Smelting, Milling & Reduction Works* v. *Stevenson,* 20 Nev. 269, 276, 279). In spite of this specific limitation, one common to most of the United States (see 1 Powell on Real Property, § 48–94), the spirit of Nevada's law finds apt expression in *Zeig* v. *Zeig* (65 Nev. 464, 476) where the court said, " It is elementary, under our system of legal procedure, that every one who may be materially affected by the action of a court in a legal proceeding is entitled to be heard, or, as ordinarily expressed, ' entitled to his day in court.' "

Nevada has held that the statutory requirement of six weeks residence is a jurisdictional pre-requisite to suits for divorce (*State ex rel. Hoffman* v. *District Court,* 232 P. 2d 397 [Nev.]). This residence must be accompanied by the intent to make Nevada the plaintiff's home (*Lamb* v. *Lamb,* 57 Nev. 421, 430.) Such intent is then a necessary jurisdictional fact without which the decreeing court is powerless to act (see *State ex rel. Hoffman* v. *District Court, supra*).

The mere finding in a decree is not conclusive. California takes that position, and there is much in the Nevada reports which makes apparent the strong influence of California law (see, e.g., *Ex Parte Boyd,* 36 Nev. 162, and *Zeig* v. *Zeig,* 65 Nev. 464 *supra;* see, also, 1 Powell on Real Property, § 86). It may well be that Nevada would follow her neighbor in allowing an attack under the doctrine of *Matter of Pusey* (180 Cal. 368, *supra*) and she may permit a finding in a decree to be attacked by a stranger as not being conclusive because " It is a fundamental rule that no court can acquire jurisdiction by the mere assertion of it, or by deciding that it has it." (*McMinn* v. *Whelan,* 27 Cal. 300, 315.) (Cf. " a court's record would establish its power and the power would be proved by the record." *Williams* v. *North Carolina,* 325 U. S. 226, 234, *supra.*)

On common-law principles, Nevada would not deny the petitioners the opportunity to attack collaterally its decrees. In *Earl of Bandon* v. *Becher* (3 Clark & F 479, 510–511, cited in Freeman on Judgments, 5th ed., Vol. 1, § 319, p. 637, n. 20) Lord BROUGHAM stated the common-law rule to be that " if the

decree has been obtained by fraud it shall avail nothing for or against the parties affected by it, to the prosecution of a claim, or to the defence of a right." He considered the following to be a summation of all the authorities: " ' A sentence is a judicial determination of a cause agitated between real parties, upon which a real interest has been settled; — in order to make a sentence there must be a real interest, a real argument, a real prosecution, a real defence, a real decision. Of all these requisites not one takes place in the case of a fraudulent and collusive suit; there is no Judge, but a person invested with the ensigns of a judicial office, is misemployed in listening to a fictitious cause proposed to him; there is no party litigating, there is no party defendant, no real interest brought into question. ' "

The reason why these petitioners are entitled to make a collateral attack upon the decree of divorce is not because they were injured in any property rights at the time the decree was entered. It is simply because the decree is void, and they have encountered in this litigation a person who now insists upon the decree against their present interest (*Old Colony Trust Co.* v. *Porter,* 324 Mass. 581, 589). In *Williams* v. *North Carolina* (325 U. S. 226, 230, *supra*) it was said: " But those not parties to a litigation ought not to be foreclosed by the interested action of others ".

On principles of the common law, on reason and theory, and on the weight of authority (see *Old Colony Trust Co.* v. *Porter, supra,* and cases cited pp. 588, 589) a collateral attack on this decree should be permitted. This court finds that Nevada would be in accord with the law generally accepted elsewhere, and would deny to no one materially affected by the action of its courts " his day in court ". Nevada would not consecrate as unassailable a decree obtained by one who, by a fictitious assertion of domicile, has misemployed those whom she has invested with the ensigns of judicial office.

Whatever appears in the record suggesting that the decedent herein participated in or had knowledge of the circumstances under which the decree was obtained and voluntarily accepted the benefits of it, would perhaps preclude him from assailing the decree (*Gerbig* v. *Gerbig,* 60 Nev. 292, 295). However, in this proceeding no right of the decedent or of his estate is the subject of inquiry (*Matter of Lindgren,* 293 N. Y. 18, 23). The right which is the subject of inquiry herein is the right to administer the estate under section 118 of the Surrogate's Court Act. It must be assumed Nevada would give nothing less than full faith and credit to the New York statute creating the

rights of the petitioners herein and the court decisions authoritatively construing it. Consequently, the court holds that if the assault on the Nevada decree here made were launched in Nevada, these petitioners would not by reason of their father's conduct be precluded from attacking, although the decedent might be forbidden.

Respondent contends that in any event the agreement entered into between the petitioners and respondent in which it is stated that the respondent is the widow, estops petitioners from questioning such status. With this contention, the court cannot agree. '' An estoppel, it has been said, ' rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.' (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292.) '' (*Lynn* v. *Lynn*, 302 N. Y. 193, 205.) And it has also been put this way: '' The principle of estoppel ' prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice.' (*Rothschild* v. *Title Guar. & Trust Co.*, 204 N. Y. 458, 464.)'' (*White* v. *La Due & Fitch, Inc.*, 303 N. Y. 122, 128.) Whatever recognition of the respondent as the widow of decedent may be contained in the exhibit in evidence, it has not been shown in anywise to have injured respondent or worked any fraud or injustice upon her. Rather, it would seem that she has received benefits to which she would be entitled only if she were in fact decedent's widow.

The application of the petitioners is granted. The letters of administration heretofore issued to respondent, Ida E. Veltri, are revoked. Letters of administration will issue to petitioners upon their duly qualifying according to law; respondent, Ida E. Veltri, is directed to file an account and to turn over to the administratrices the assets of the estate upon their qualifying according to law.

Proceed accordingly.